# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE AND** | : | No. 3:03cv1741 |
| **CASUALTY COMPANY as** | : | |
| **SUBROGEE for JESSICA** | : | (Judge Munley) |
| **K. NEMETZ and** | : | |
| **JOSEPH F. TAYOUN,** | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| **HONEYWELL INTERNATIONAL,** | : | |
| **INC., ADEMCO GROUP and** | : | |
| **MONITRONICS** | : | |
| **INTERNATIONAL, INC.,** | : | |
| **Defendants** | : | |
| | : | |
| v. | : | |
| | : | |
| **COMPLIANCE CORPORATION,** | : | |
| **Third-Party Defendant** | : | |

## MEMORANDUM

Before the court for disposition are cross-motions for summary judgment filed by Third-Party Plaintiff Monitronics International, Inc. ("Monitronics") and Third-Party Defendant Compliance Corporation ("Compliance"). The matters have been fully briefed and are ripe for disposition.

**Background[1]**

Jessica K. Nemetz and Joseph Tayoun owned a house and garage insured by Plaintiff State Farm. The house was equipped with a smoke detection system that was designed to automatically telephone the

---

[1] We have dispensed with citations to the record for the background facts as the parties do not dispute them.

fire department if it detected smoke. Third-Party Defendant Compliance installed the system. Compliance entered into an Alarm Sales and Installation Agreement and Alarm Monitoring Agreement with the homeowners to provide service to the premises. Compliance sold the Alarm Monitoring Agreement to Monitronics pursuant to an "Alarm Monitoring Purchase Agreement" (hereinafter "Agreement").

A fire occurred on June 22, 2001 causing over $200,000.00 worth of damage to the structures. The alarm system did not function properly on the day of the fire. State Farm paid benefits to the homeowners for their fire loss pursuant to the terms of the insurance policy, and State Farm then brought a subrogation action against Honeywell International, Inc., Ademco Group and Monitronics.

Defendant Monitronics filed a Third-Party Complaint against Compliance. The Third-Party Complaint asserts that Compliance Corporation's negligence caused the damages. It also asserts that pursuant to the terms of the Agreement, Compliance must indemnify Monitronics and pay for its defense of this action.

Plaintiff State Farm has settled the original complaint. The only matter that remains is the third-party complaint of Monitronics versus Compliance. In the settlement of the original complaint, Defendant Monitronics was not required to pay damages. It did, however, incur attorney's fees. The only issue remaining in the case, therefore, is whether, under the Agreement, Compliance is liable to Monitronics for its attorneys fees in defending the lawsuit. At the close of discovery both Monitronics and Compliance moved for summary judgment bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain

v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

3

Pennsylvania law provides that contract interpretation is a matter of law for the court to decide where the terms of the contract are unambiguous. Dieter v. Fidelcor, Inc., 657 A.2d 27, 29 (Pa. Super. Ct. 1995). The goal of such interpretation is to give effect to the parties' intent, which we must ascertain from the language of the written agreement. Id. Where technical terminology is not utilized we must give the terms of the agreement their plain and ordinary meaning. Id.

Monitronics assert that under the terms of the Agreement, Compliance is obligated to pay for its legal fees in defending this action and that Compliance has refused to do so. Compliance's position is that the agreement does not provide for legal fees in defending claims but is merely an indemnification agreement. We agree with Compliance.

We find Monitronics' arguments unconvincing for several reasons. The first is the language of the indemnity clause itself. The wording of the agreement is clear and unambiguous. Compliance agrees to indemnify and hold Monitronics harmless for any and all damages, losses, tax deficiencies, liabilities, costs and expenses resulting from, relating to or arising out of (a) any misrepresentation, (b) any breach of warranty or (c) and non-fulfillment of any agreement or covenant. Agreement ¶ 6.02.[2]

Monitronics states, "Pursuant to the terms of the Agreement, Compliance was obligated to defend, hold harmless, indemnify and insure Monitronics against all claims in this civil action." Monitronics Brief in Support of Summary Judgment (Doc. 32) at 6 -7. The terms of the indemnification clause, however, mention nothing about *defending* Monitronics in a civil action. In fact, unless Compliance has made a misrepresentation, breached a warranty, or failed to fulfill an agreement or covenant, then it is not liable for

---

[2]The Agreement can be found as exhibit 8 to Monitronics motion for summary judgment.

4

anything under the indemnity clause.

>Specifically, the Agreement provides as follows:

>>Seller [Compliance] shall indemnify and hold harmless Purchaser [Monitronics] and its officers, directors, employees, agents, shareholders and their successors and assigns from, against and in respect of any and all damages, losses, tax deficiencies, liabilities, costs and expenses resulting from, relating to or arising out of (a) any misrepresentation, (b) any breach of warranty or (c) and non-fulfillment of any agreement or covenant, in any case made by or on the part of Seller [Compliance] hereunder or under any Addendum, including any misrepresentation or breach of warranty in any of the certificates or instruments delivered or to be delivered pursuant hereto or under any Addendum.

Agreement ¶ 6.02.

Monitronics has not established that Compliance has made a misrepresentation, breached a warranty, etc. Therefore, strictly as a matter of contract construction, Compliance has no obligation under the indemnity clause.

Monitronics argues that regardless of whether Compliance was liable for damages under the indemnity clause, it is required to pay for the defense of claims that would have fallen within the indemnity clause. In effect, Monitronics argues that an implied duty exists to pay defense costs of anything that could fall within the indemnity clause. We are unconvinced.

In support of its position, Monitronics cites, Hackman v. Moyer Packing, 621 A.2d 166 (Pa. Super. Ct. 1992). We find Monitronics reliance on Hackman to be misplaced.

In Hackman, a cleaning service, Currie Cleaning Service (Currie), had an indemnity agreement with its customers that if Currie's employees were injured on the customer's property, the cleaning service would indemnify the customer. Id. at 380. A Currie employee fell while cleaning at a customer's premises and sued it for her injuries. The customer brought Currie, the cleaning service, in as a third-party defendant

based upon the indemnification agreement. Id. The main issue of the case was whether the indemnification agreement was specific enough to be enforced in the employment context. Id.

The court also briefly discussed counsel fees. The court stated that the contract required indemnification as well as the duty to undertake the defense of the case. Id. at 383.  Because of that agreement, the employer had to reimburse its customer for counsel fees and costs in defending the action. Id.  The court is not specific as to whether they find this requirement implied in the indemnification agreement or whether it is an express term of the contract.  It appears, however, that it was an express term of the contract as the court stated "[t]he contract requires [the third-party defendant] to undertake the defense of actions. . . ." Id.  Accordingly, we cannot rely on this case for the proposition that a duty to provide a defense is implied in every indemnification agreement.

Moreover, other cases upon which Monitronics relies are not on point. The cases deal with the duty to defend in the insurance contract context, not in the indemnity context. See First Oak Brook Corp. Syndicate v. Comly Holding Corp., 93 F.3d 92 (3d Cir. 1996) (cited by the plaintiff but dealing with insurance contract); Exchange v. Muff, 851 A.2d 919 (Pa. Super. Ct. 2004) (same).  Plaintiff has cited no case that holds that the duty to defend in the indemnity context is as broad as in the insurance context. In fact, as discussed more fully below, the duty to defend in indemnity context is narrower than that same duty in the insurance context.

While our research has uncovered no case that deals with a specific indemnification clause such as in the instant case, the common law of indemnity is instructive with regard to when attorneys fees may be awarded. The Third Circuit Court of Appeals has generally described an indemnitor's duty to defend as follows:

6

> The general rule is that an indemnitee may recover attorney's fees and costs incurred in defense of the liability indemnified against from the indemnitor. A.C. Israel Commodity Co. v. American-West African Line, Inc., 397 F.2d 170, 172 (3d Cir.1968). Pennsylvania law is no different. The Pennsylvania Supreme Court has favorably cited the Restatement (Second) of Torts, § 914(2) (1976), which provides:
>> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for the loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.
>
> Vattimo v. Lower Bucks Hosp., Inc., 502 Pa. 241, 465 A.2d 1231, 1235 (1983). The court has also held that "an indemnitee may recover attorney's fees and costs from the indemnitor notwithstanding the fact that these expenses have already been paid by the indemnitee's insurance carrier." Boiler Eng'r & Supply Co. v. General Controls, Inc., 443 Pa. 44, 277 A.2d 812, 814 (1971). The court, however, limited these fees to defense litigation and did not extend them to the indemnification litigation. Id. Accord Fisher v. United States, 299 F.Supp. 1, 34 (E.D.Pa.1969), reversed on other grounds, 441 F.2d 1288 (3d Cir.1971); Papas v. Kohler Co., Inc., 581 F.Supp. 1272, 1273 (M.D.Pa.1984). Thus, in an indemnification action under Pennsylvania law, the indemnitee is entitled to attorney's fees and costs incurred in the underlying defense litigation.

Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 117 (3d Cir. 1992).

At first blush, the duty to provide a defense appears quite broad. The court proceeded, however, to note that "before any right of indemnification arises, the indemnitee **must in fact pay damages** to a third party." Id. 122 (emphasis added).

The case of Automatic Time and Control, Co., Inc. v. ifm Electronics, 600 A.2d 220 (Pa. Super. Ct. 1991) is also instructive although it deals with indemnity with regard to products liability. In Automatic Time, the Pennsylvania Superior Court addressed the following issue: "[W]hether a retailer or other seller of a product has a right to recover attorney's fees and other defense expenses from the manufacturer of the product, incurred in the defense of a product liability case, where there has been no finding that there was

7

manufacturing neglect, and no liability incurred by the seller in the product liability action." Id. at 438.  The court held that manufacturer was not liable for the legal fees because the case was successfully defended.  The court noted that several well-developed procedures are available for these types of cases to provide for attorney fees, including: joinder of the manufacturer as a party to the case; contract with the manufacturer to provide a defense against potential claims; obtain insurance to cover such costs. Id. at 440-41.  See also Scardino v. Amalgamated Bank of New York, No. CIV. A. 93-6740, 1994 WL 408180 *2 (E.D. Pa. Aug. 2, 1994) (finding that a mere loss of attorney fees does not create an indemnity claim).

The instant case is analogous to the Automatic Time case.  Monitronics has expended funds on legal fees.  Ultimately, however, it paid no damages and there was no finding that Compliance was negligent or liable in some other way.  Because there was no finding of liability, then no duty exists for Compliance to indemnify Monitronics with respect to defense fees.  Accordingly, summary judgment will be granted to Third-Party Defendant Compliance Corporation.

Monitronics raises one other issue in its brief.  It asserts that Compliance breached another term of the Agreement.  Paragraph 3.21 of the Agreement provides that Compliance was obligated to procure and maintain a commercial general liability insurance policy.  Evidently, Compliance never obtained such insurance.  Monitronics now seeks to claim that the breach of this section of the contract led to it suffering damages, that is, the payment of defense counsel fees. We are unconvinced.

We cannot grant summary judgment to Monitronics on this issue as it does not appear in Monitronics' Third-Party Complaint.  Two counts are pled in the complaint, negligence and contractual contribution and/or indemnity.  See (Doc. 9)  There is no cause of action for breach of this contract clause

that is completely separate from the indemnity clause.  Moreover, this topic is not discussed in the Third-Party Complaint at all.

In addition, even if a cause of action had been pled based upon Compliance's duty to obtain general liability insurance, summary judgment against Monitronics would nonetheless be appropriate. Nothing in the clause indicates that Monitronics should be a co-insured under the policy that Compliance was obligated to purchase.  Monitronics was the entity originally sued in this case.  The paragraph does not require Compliance to obtain insurance that will cover Monitronics legal fees.  Therefore, even if the insurance had been procured, it would not have necessarily been any benefit to Monitronics.

**Conclusion**

We are left to interpret the indemnity agreement as written.   According to the clear and plain language of the indemnity provision, Compliance must provide indemnity in certain instances.  This clause is not triggered in the instant case because Monitronics has presented no evidence that any of the prerequisites for indemnity have occurred.  Further, even if the clause had been triggered it does not provide for counsel fees.  While the common law may impose a duty of defense where indemnity is imposed, that is not applicable in the instant case because there is not duty to indemnify present.  For the foregoing reasons, summary judgment will be granted to Third-Party Defendant Compliance and against Third-Party Plaintiff Monitronics.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM FIRE AND** | : | No. 3:03cv1741 |
| **CASUALTY COMPANY as** | : | |
| **SUBROGEE for JESSICA** | : | (Judge Munley) |
| **K. NEMETZ and** | : | |
| **JOSEPH F. TAYOUN,** | : | |
|        **Plaintiffs** | : | |
| | : | |
|   **v.** | : | |
| | : | |
| **HONEYWELL INTERNATIONAL,** | : | |
| **INC., ADEMCO GROUP and** | : | |
| **MONITRONICS** | : | |
| **INTERNATIONAL, INC.,** | : | |
|        **Defendants** | : | |
| | : | |
|   **v.** | : | |
| | : | |
| **COMPLIANCE CORPORATION,** | : | |
|        **Third-Party Defendant** | : | |

**ORDER**

**AND NOW**, to wit, this 19th day of August 2005, Third-Party Defendant Monitronics International Inc.'s motion for summary judgment (Doc. 32) is hereby **DENIED**, and the motion for summary judgment of Third-Party Defendant Compliance Corporation (Doc. 33) is **GRANTED**. The Clerk of Court is directed to close this case.

                                                            **BY THE COURT:**

                                                            **s/ James M. Munley**
                                                            **JUDGE JAMES M. MUNLEY**
                                                            **United States District Court**